UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD HARTLING,

    **Plaintiff,**

v.                                         Case No. 8:18-cv-1021-T-AAS

ANDREW SAUL,
**Commissioner,**
**Social Security Administration,**[1]

    **Defendant.**
_____/

## ORDER

Richard Hartling seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. § 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, pleadings, and joint memorandum submitted by the parties, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Mr. Hartling applied for DIB on March 5, 2015, alleging disability beginning on October 1, 2010. (Tr. 82, 94, 183–84). Mr. Hartling amended his disability onset

---

[1] On June 17, 2019, Andrew Saul became Commissioner of the Social Security Administration. Consistent with Federal Rule of Civil Procedure 25(d), Mr. Saul is substituted as a party in Nancy Berryhill's place.

1

date to September 20, 2011.² (Tr. 194). Disability examiners denied Mr. Hartling's application initially and on reconsideration, and a hearing was held before an ALJ. (Tr. 48–81). The ALJ issued an unfavorable decision. (Tr. 14–37).

The Appeals Council denied Mr. Hartling's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6). Mr. Hartling now seeks judicial review of the Commissioner's decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Mr. Hartling was fifty-four years old on his date last insured. (Tr. 183). Mr. Hartling has two years of college education and past relevant work as a prison guard in a maximum-security prison. (Tr. 54, 199, 201, 219). Mr. Hartling claims disability because of spinal stenosis, spinal fusion with laminectomy, lumbar disc herniations, post-traumatic stress disorder (PTSD), depression, high blood pressure, gastritis, GERD, diarrhea, nausea, and stomach pain. (Tr. 200, 246).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.³ 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,⁴

---

² Mr. Hartling's date last insured is December 31, 2015. (Tr. 185). Thus, the relevant period is from September 20, 2011 through December 31, 2015. *See* 42 U.S.C. §§ 416(i), 423(c)(1); 20 C.F.R. §§ 404.101, 404.130, 404.131.

³ If the ALJ determines that the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

⁴ Substantial gainful activity is paid work that requires significant physical or mental activity. § 404.1572.

2

he is not disabled. § 404.1520(b). Second, if a claimant does not have an impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he does not have a severe impairment and is not disabled. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent him from performing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[5] Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing other work in the national economy, he is not disabled. § 404.1520(g).

The ALJ here determined Mr. Hartling had not engaged in substantial gainful activity from his alleged onset date of September 20, 2011, through his date last insured of December 31, 2015. (Tr. 19). The ALJ found Mr. Hartling had these severe impairments:

> history of degenerative disc disease of the cervical spine status post remote C5-6 discectomy and fusion and remote laminectomy and fusion at C4-5 and C6-7, with residual stenosis and radiculopathy as well as indication of failed neck syndrome; degenerative disc disease of lumbar spine with L4-5 extrusion causing moderate impingement of

---

[5] A claimant's RFC is the level of physical and mental work he can consistently perform despite her limitations. § 404.1545.

3

> ventral sac and mild disc bulge at L3-4 with stenosis and
> possible radiculopathy; unspecified depressive and anxiety
> disorders; and PTSD.

(*Id.*). However, the ALJ found Mr. Hartling's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 19–21).

The ALJ then found Mr. Harling could perform light work with these limitations:

> a sit/stand option every 30 to 60 minutes; never climb ladders, ropes, or scaffolds, and never crawl; occasionally climb ramps or stairs, balance, stoop, kneel, or crouch; occasionally operate foot controls bilaterally, and push/pull with the upper extremities bilaterally; frequently reach, handle and finger bilaterally; avoid concentrated exposure to extreme temperatures, excessive noise and excessive vibrations; avoid all exposure to hazardous machinery or unprotected heights; limited to simple routine repetitive tasks in a low-stress job (defined as only occasional decision making, only occasional changes in work setting, and no in-person interaction with the public and only occasional in-person interaction with co-workers).

(Tr. 21). Based on these findings and the testimony at the hearing, the ALJ determined Mr. Hartling could not perform his past relevant work. (Tr. 29). However, the ALJ found Mr. Hartling could perform other jobs that exist in significant numbers in the national economy. (Tr. 30). Thus, the ALJ found Mr. Hartling not disabled. (Tr. 31).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Phillips*, 357 F.3d at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

B.  **Issues on Appeal**

Mr. Hartling raises four issues on appeal. First, Mr. Hartling argues the ALJ failed to properly evaluate Alan Levine, M.D.'s treatment notes. (Doc. 16, pp. 10–12). Next, Mr. Hartling argues the ALJ failed to properly weigh the medical opinions of Beth Anlas, D.O., James Patty, M.D., Ricky Lockett, D.O., and Michael Eastridge, Ph.D. (*Id.* at pp. 16–17). Third, Mr. Hartling argues the ALJ failed to properly consider Mr. Hartling's subjective complaints. (*Id.* at pp. 23–24). Finally, Mr. Hartling argues the ALJ did not conduct a full and fair hearing. (*Id.* at pp. 27–28).

1. **Whether the ALJ properly evaluated Dr. Levine's treatment notes.**

Mr. Hartling argues the ALJ failed to properly evaluate Dr. Levine's treatment notes because the ALJ did not assign specific weight to a diagnosis of failed neck syndrome. (*Id.* at pp. 9–12). The Commissioner responds that Dr. Levine's reference to failed neck syndrome in his treatment notes does not constitute a medical opinion that requires the assignment of specific weight. (*Id.* at pp. 12–16).

An RFC is the most a plaintiff can do, despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1). An ALJ bases his RFC finding on all relevant record evidence, including statements from medical sources, or medical opinions. §§ 404.1545(a)(1), (a)(3). Medical opinions are defined as statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including his symptoms, diagnosis, and prognosis, what he can still do despite the impairments, and his physical or mental restrictions. § 404.1527(a)(2). When assessing a plaintiff's RFC, the ALJ considers "statements about what [the claimant]

6

can still do . . . [and] descriptions and observations of [] limitations . . ..." § 404.1545(a)(3).

Dr. Levine diagnosed Mr. Hartling with failed neck syndrome in two separate treatment notes. (Tr. 888, 948). Although treatment notes "fall under the broad definition of a 'medical opinion' . . ." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011), the ALJ need not cite and weigh every treatment note. *See Gonzalez v. Colvin*, No. 15-24147-CIV, 2017 WL 1035519, at *14 (S.D. Fla. Mar. 17, 2017). Dr. Levine's treatment notes do not provide insight about the nature and severity of Mr. Hartling's failed neck syndrome nor do they explain the limitations imposed by this diagnosis. (Tr. 25, 26, 839–57, 877–950, 1064–65, 1070–72). Thus, it was not necessary that the ALJ afford specific weight to Dr. Levine's diagnosis of failed neck syndrome.

In any event, "[a]n ALJs failure to assign weight to a medical opinion is harmless and does not warrant remand when the opinion does not contradict the ALJ's decision." *Gonzalez*, 2017 WL 1035519, at *15. The ALJ discussed Dr. Levine's treatment records, along with the other medical records, and found Mr. Hartling is capable of "a reduced range of light work with various postural, ambulatory, and mental limitations." (*See* Tr. 25–26, 28). Dr. Levine's medical notes do not contradict this RFC finding. (*See* Tr. 839–57, 877–950, 1064–65, 1070–72). Thus, remand is not required on this issue.

### 2. Whether the ALJ properly weighed the opinions of Drs. Anlas, Patty, Lockett, and Eastridge.

Mr. Hartling argues the ALJ failed to properly weigh the opinions of Drs. Anlas, Patty, Lockett, and Eastridge. (Doc. 16, pp. 16–17). In response, the Commissioner contends the ALJ correctly accorded little weight to the opinions of Drs. Anlas, Lockett, and Eastridge because they post-dated the expiration of Mr. Hartling's insured status and offered no opinion about Mr. Hartling's limitations before his date last insured. (*Id.* at pp. 17–23). The Commissioner also argues the ALJ accorded appropriate weight to Dr. Patty's opinions because they were consistent with the records created during the relevant period. (*Id.*).

When assessing the medical evidence, the ALJ must state with particularity the weight accorded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179 (citation omitted). In determining the weight to afford a medical opinion, the ALJ considers many factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. § 404.1527(c). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless there is "good cause" to the contrary.[6] *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted).

---

[6] Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. Phillips, 357 F.3d at 1240–41. The ALJ may reject any opinion when the

### a. Dr. Anlas

In a February 2017 treatment note, Dr. Anlas opined Mr. Hartling was limited to five to ten minutes of sitting and standing, and he could never lift over five pounds. (Tr. 1074). The ALJ gave little weight to these opinions as unsupported by Dr. Anlas's own treatment records and not related to the relevant period. (Tr. 26).

Mr. Anlas's medical opinion is dated more than a year after the expiration of Mr. Hartling's date last insured and there is no indication this opinion relates back to before Mr. Hartling's date last insured. (*Id.*). In addition, Dr. Anlas's treatment records do not support the limitations imposed. For example, Dr. Anlas noted Mr. Hartling's condition was generally controlled with medications. (Tr. 1000, 1013, 1069). Mr. Hartling's gait and station were normal and sensory findings were consistently intact. (Tr. 996, 999, 1002, 1005, 1008, 1009, 1012, 1014, 1069).

The ALJ properly considered the February 2017 opinions of Dr. Anlas and gave them little weight as inconsistent with her own treatment notes and outside the relevant period.

### b. Dr. Patty

Dr. Patty opined Mr. Hartling could lift ten pounds frequently and twenty pounds occasionally, stand or walk up to six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 102–04). Although Dr. Patty's opinion was not dated in the relevant period, the ALJ gave it some weight because there was

---

evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

9

little change in the medical evidence after that time. (Tr. 24–25, 29). Although Dr. Patty did not examine Mr. Hartling, he reviewed the medical evidence and his opinion is supported by and consistent with the record. (*See* Tr. 24–29, 102–04, 619, 639, 645, 653, 667, 673). The ALJ had good cause to give Dr. Patty's opinion some weight.

### c. Dr. Lockett

The ALJ assigned little weight to Dr. Lockett's opinions dated after Mr. Hartling's date last insured. (Tr. 28). The ALJ found Dr. Lockett's opinions conclusory and lacking support. (*Id.*). For example, despite imposing strict physical limitations, Dr. Lockett's records note Mr. Hartling demonstrated intact sensation, 5/5 motor strength, and functional coordination and balance. (Tr. 27, 1083). Thus, the ALJ articulated good reasons, supported by substantial evidence, for discounting Dr. Lockett's opinions and limitations.

### d. Dr. Eastridge

The ALJ assigned little weight to the March 2017 opinion of Dr. Eastridge because the opinion does not address Mr. Hartling's abilities before the date last insured and the opinion was vague and nonspecific. (Tr. 28). In addition, as the ALJ noted, Dr. Eastridge's opinion relies on the wrong standard for assessing mental impairments. (Tr. 29). Thus, substantial evidence supports the ALJ giving little weight to Dr. Eastridge's opinion.

****

The ALJ properly evaluated the opinions of Drs. Anlas, Lockett, and Eastridge, and found their imposed restrictions did not apply to the relevant period and were

10

not supported by the record. The ALJ also properly accorded some weight to Dr. Patty's opinion because it was consistent with the relevant medical evidence.

### 3. Whether the ALJ properly evaluated Mr. Hartling's subjective complaints.

Mr. Hartling contends the ALJ erred in assessing his subjective complaints by failing to address his treatment history. (Doc. 16, pp. 23–24). In response, the Commissioner argues the ALJ properly assessed Mr. Hartling's subjective symptoms along with the other evidence in the record to determine Mr. Hartling's RFC. (*Id.* at pp. 24–27).

To make an RFC determination, the ALJ must assess the claimant's subjective statements about his symptoms. 20 C.F.R. § 404.1529(c)(3)(v), (4). An ALJ can consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors about the claimant's functional limitations and restrictions because of her pain or symptoms. § 404.1545(c)(3).

The ALJ considered Mr. Hartling's subjective statements about the intensity, persistence, and limiting effects of his symptoms and found them inconsistent with the other record evidence. (Tr. 23). The ALJ explained that Mr. Hartling retained intact neurological examination findings. (Tr. 28, 619, 639, 645, 653, 667, 673). Mr. Hartling was doing "very well" after his cervical laminectomy and continued to work

for many years. (Tr. 24, 332–33). Although Mr. Hartling amended his alleged disability onset date, he provided no medical evidence for 2010, 2011, or 2012. (Tr. 24). The first treatment record provided for the relevant period was dated April 2013 (over a year after the alleged onset date), and the record only addressed Mr. Hartling's complaint of a foreign body in his ear. (Tr. 24, 497).

Phuong Nguyen, M.D., Mr. Hartling's primary care physician, consistently found Mr. Hartling had normal muscle strength in all major muscle groups, normal gait, no bony tenderness in the back, 5/5 grip strength, 5/5 arm flexion and extension, 5/5 leg extension, able to stand on toes, and walk on heels. (Tr. 619, 639, 645, 653, 658, 662, 667, 673). Dr. Nguyen also noted Mr. Hartling exercised often. (Tr. 619, 644, 652).

The only mental health evidence during the relevant period consists of two separate one-page reports from Betty Wood, Psy.D., who stated she had treated Mr. Hartling for PTSD since March 2011. (Tr. 26, 838, 859). The ALJ gave little weight to these reports because the treatment records did not evidence regular or ongoing treatment. (Tr. 26, 28). Mr. Hartling also did not exhibit mental deficits when presenting to other medical providers. (*See* Tr. 638–39, 658, 663, 667, 673, 863, 996, 999, 1005, 1008, 1012, 1069).

The ALJ found Mr. Hartling's ability to engage in daily activities to be inconsistent with his subjective complaints. (Tr. 27). *See* 20 C.F.R. § 404.1529(c)(3)(i) (listing specifically the claimant's daily activities as one factor to consider in evaluating a claimant's symptoms). The ALJ noted that, despite Mr. Hartling's

12

impairments, he exercised regularly, traveled, attended church weekly, visited his grandchildren, watched television, and prepared simple meals. (Tr. 27, 66, 619, 638, 642, 644, 652, 862).

Contrary to Mr. Hartling's argument, the ALJ considered Mr. Hartling's treatment in assessing his subjective complaints. The ALJ stated that Dr. Levine continued to offer epidural and trigger point injections for Mr. Hartling's neck and back pain. (Tr. 26, 839–57, 877–950, 1070–72). The ALJ also noted Mr. Hartling's three-month supply of painkillers would typically last eight to nine months. (Tr. 24). The ALJ properly considered this conservative treatment in assessing the intensity and persistence of his subjective complaints. 29 C.F.R. § 404.1529(c)(3)(v); *see also Wolfe*, 86 F.3d at 1078 (finding substantial evidence to discredit the claimant's testimony about pain where his course of treatment was conservative).

The ALJ considered the relevant evidence in evaluating Mr. Hartling's subjective complaints and substantial evidence supports that his subjective complaints are not entirely consistent with the record.

### 4. Whether the ALJ adequately developed the record.

Mr. Hartling argues the ALJ failed to conduct a full and fair hearing. (Doc. 16, pp. 27–28). Mr. Hartling's contends the ALJ failed in his inquisitorial duties by not asking about the reason Mr. Hartling needed more time than prescribed to take his medication, and he alleges the delay was due to medication side effects. (*Id.*). Mr. Hartling also contends the ALJ should have recontacted Dr. Levine because some of his treatment notes were illegible. (*Id.*).

An ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). "[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison*, 355 F.3d at 1276.

The ALJ noted Mr. Hartling's statement that his medications caused side effects. (Tr. 24, 28). However, as the ALJ stated, the medical evidence did not corroborate these allegations, nor did it show Mr. Hartling's medication side effects caused limitations greater than those in the RFC. (Tr. 28). *See Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 949 (11th Cir. 2006) (holding ALJ did not err in discrediting testimony of alleged medication side effects because there was no evidence the claimant consistently reported those effects).

Mr. Hartling also argues the ALJ must recontact Dr. Levine to clarify his treatment records because some comments in the records were illegible. In determining whether to remand for further development, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 878–80 (11th Cir. 2014). The ALJ summarized Dr. Levine's treatment records. (Tr. 25). Dr. Patty also reviewed Dr. Levine's treatment notes. (Tr. 102–04). Because Mr. Hartling

14

provides no evidence that information was missing from Dr. Levine's notes or the ALJ's review of Dr. Levine's notes that would establish disability, Mr. Hartling failed to establish evidentiary gaps resulting in unfairness or prejudice. *See Jones v. Comm'r of Soc. Sec.*, 5:15-CV-269-OC-PRL, 2016 WL 4120442, at *4 (M.D. Fla. Aug. 3, 2016) (holding remand was not required when the plaintiff produced no evidence to suggest that the illegible notes would have established a disability).

Thus, the ALJ properly considered Mr. Hartling's alleged medication side effects and Dr. Levine's treatment notes and remand is not required.

## IV. CONCLUSION

The Commissioner's decision is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court must enter final judgment for the Commissioner consistent with 42 U.S.C. Sections 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida on September 5th, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge